Please call the next case. 514-0139, Holland Medical Equipment v. Workers' Compensation Comm'n. You may proceed. Your Honor, as I may please the Court, my name is Matthew Rukusik and I'm here on behalf of Holland Medical Equipment here today to ask that this Court reverse the Commission's decision with regard to an award of a specific vocational rehabilitation plan. The question in this case is whether the decision of the Illinois Workers' Compensation Commission ordering that specific rehab plan was contrary to law. And today I'm going to address two points which are also made in our case. The first point being the standard of review before this Court and the second point being whether or not the decision is contrary to law. Now, in the briefs, an issue came up where the parties are disputing the appropriate standard of review before this Court. It is the plaintiff's appellant's position today that the correct standard of review is de novo for this Court because the only question here today is the application of the law to an undisputed set of facts. And because of that being a question of law, the Commission decision should be reversed under a de novo review and set aside. So you're saying, why are you saying the facts are not susceptible to only a single inference or are susceptible to only a single inference? Because the facts relevant to the argument here today have to do not with whether the petitioner, I'm sorry, the injured worker is entitled to a vocational rehabilitation plan. It's simply whether or not that there was – whether the evidence presented met his burden of proof on the question of law. Well, I think you'll have something to say. I'm anticipating, and maybe I shouldn't, that he's probably not going to agree with your de novo review, but we'll find out from him. He does not agree. He does not? I'm psychic, and it's great to learn that. That is addressed in the brief, and I'm happy to argue the standard of review, but I will say that it largely doesn't matter because under either standard of review, a de novo review, or against the manifest weight of the evidence, the court should – That's a good fallback position. Even if it's about manifest weight, you want to tell us you're still going to win, right? Correct. Excuse me, counsel. One additional item before you get into the merits here. In terms of the issue of voc rehab, did you raise that in your petition for review in the circuit court? In the circuit court, the proprietary attorney handled the case, and they did challenge the vocational rehabilitation plan, yes. Okay, so that was addressed? Yes. Okay, thank you. And that brings me to the first point I'd like to make, and that's simply prior to the review before this court, there were other disputed accidents. I'm sorry, other disputed issues before the commission. Accident was in dispute, notice was in dispute, there was an issue regarding temporary total disability, medical expenses, as well as vocational rehabilitation and maintenance. At the time the case was decided, it was ruled on a 19B decision, but when I talk about the fact that today there are no dispute over the relevant facts before this court, I'm simply pointing out that with regards to the vocational rehabilitation, it's not the respondent's position that the petitioner is not entitled to vocational rehabilitation. The question is whether this plan is appropriate and is supported by the law. What plan are we talking about? Well, and that's a great point to make. Because there's all the arbitration. You retained this McKee, but did you authorize him to provide any rehab services in reality? The prior attorney did not at the time. The accident was in dispute, and in reviewing the commission records, I'm only left to speculate to why they did or did not choose to engage in vocational rehabilitation services. Let me just try and cut to the chase here. The undisputed evidence, as you alluded to, you're not disputing the fact the claimant can never return to his previous line of work, correct? That is correct. So then your company retains this McKee, is not authorized to provide any voc rehab services, there was no written assessment as to the belief of no vocational rehab, and so on. How do you win this case? Well, Your Honor, that position, as I mentioned, has changed since the initial onset of the case. Initially, the case accident and notice were in dispute. The respondent felt that the petitioner did not have a compensable accident and did not have notice, and therefore was not in a position to award costly vocational rehabilitation services. At appeal before this court today, its only question being challenged is a specific vocational plan recommended by arbitrator Granada and affirmed by the commission in the circuit court. And that plan being an award of vocational rehabilitation in the form of education towards a degree in social work. Now... And why is that wrong as a matter of law? Even accepting your de novo... Okay. Finding, Your Honor, that the courts have previously held, the Supreme Court has held, that findings based on the application of an incorrect conclusion of law are not entitled to a deference, and therefore a de novo review is in question. Because what we have here is the claimants must still prove certain elements of a claim, and that is purely a question of law, whether he met the burden of proof. And it therefore was why the case should be reviewed. What is it that he didn't meet? What part of his burden of proof did he not meet? Well, there is no vocational rehabilitation plan in question here. All we have is a claimant who testifies at trial that I want to go to work as a social worker. There is no vocational rehabilitation plan. So you're saying he has to have an expert come in? Well, the court in Hunter Corporation v. Industrial Commission, in National T versus Industrial Commission, talk about the different factors and guidelines that go into whether a determination of a vocational rehabilitation plan is appropriate. In addressing those factors, the court in National T found the factors to consider include the cost and benefit of the desired program, the claimant's work-life expectancy, the claimant's ability and motivation to undertake the program, and the claimant's prospect for recovering work capacity through a medical rehabilitation or other means. Those don't sound like factual issues for the commission to determine. Right. And the question here is whether or not the petitioner had presented the evidence, the burden of proof. But even if this court was to hold my client to the increased burden that proved that it is not against the manifest weight of the evidence, the Supreme Court's prior decisions in Hunter and National T all support a finding that the commission erred in awarding a specific vocational rehabilitation plan. And here, you know, the facts are... So you're saying that the claimant's testimony alone establishes he could never return to the line of work. He testifies that, you know, he's got some credits. If he completes his education, he'll be able to work as a social worker.  So why can't the commission do that as a matter of law? They can't say that we're going to allow him, we're going to order that he be allowed to complete his education. They can't do that? Had the commission undergone the appropriate analysis, it possibly could have. But in this case, there was insufficient evidence to support... Well, what was lacking from their findings, their analysis? What was lacking? Well, there was no analysis, Your Honor. And basically, the commission, as the court recognized in the case of Hunter v. Industrial Commission, which is very much on point in the matter here, the plan presented by the petitioner, and I'm going to paraphrase the Supreme Court, is simply in the form of a rehabilitation program that appears to be based on a wish of the petitioner. Petitioner testifies, I want to go to school to be a social worker. Now, in this case, and looking at the factors in national... Well, let me just make a point here. I mean, the commission adopted, affirmed and adopted the arbitrator's decision, right? That is correct. Well, I had a little trouble determining from your brief what the arbitrator's analysis was because you only included every other page of it in the appendix. Are you aware of that? I was not aware of that simply because I... The Supreme Court rules say you have to include the arbitrator's decision in the appendix, and it's kind of hard to determine what the analysis was, at least just from looking at the brief, because only every other page is in it. Well, as that may be correct, I am happy to report that regarding the issue of vocational rehabilitation, the arbitrator's decision does include his analysis. Does it? It does. Well, then the commission adopted that, so that's the analysis, right? The analysis that the commission adopted, yes, Your Honor. So what did that analysis lack? What the analysis lacked is it did not meet the guidelines set forth by National Key and Hunter because there was no analysis to whether or not this type of vocational rehabilitation was appropriate. First of all, there is no plan here. All we have is the petitioner's testimony that he wants to go to school to be a social worker. There is no evidence that a degree in social work... Why is that not a plan? He's going to get a college education to become a social worker. It's the basis of a plan, but it is not a plan because what does it entail? Are we looking for an associate degree? Are we looking for a bachelor's degree, a graduate degree? Are we looking for a Ph.D.? We don't know what type of job he's looking for. We don't know what are the criteria necessary to find that job. He presented no evidence to establish that there are jobs available in the region or that the job would be available based on the degree. Something that should be very significant here is there's no proof that the petitioner can even obtain the degree in social work. At the time of the hearing, the petitioner had gone back to school, working back at the school at John A. Logan, which is a community college based in southern Illinois. He had every intention to pursue an education at Southern Illinois University in Carbondale, but he was not admitted to Southern Illinois University in Carbondale. Therefore, although he may have put in some information about the prerequisites for the degree program at Southern Illinois University, Carbondale, it's irrelevant because he is not a student there. All right, so what if he doesn't go there? So are you going to be ordered to pay for something if he doesn't go there? Right now, it's open-ended. Under the Supreme Court's rule, if he chooses, arguably he could choose to go to school at a vocational program in another state, in another jurisdiction. There is nothing tying him to a specific program. By the same token, you're arguing one side of the coin. You're also saying if he doesn't go on to get a four-year degree, then you're not on the hook for it, are you? Well, but that's the question, Your Honor. We don't know if he even needs a four-year degree here. He testified. Can't they go with what they call his self-directed plan? He testified that he could work as a social worker, if he completed the necessary coursework and credits, he outlined the options, and, you know, so what's wrong with that? Because that is based only on speculation and conjecture. He has not presented any evidence to show that jobs are available with the degree in social worker that he's pursuing. We don't even know what degree. I'm looking at Amical Oil v. Industrial Commission, which outlines whether the factors in determining if rehabilitation is appropriate, and one of them is clearly cited in the case. The employee is likely, likely is the word, to obtain employment upon completion of the rehabilitation training. Can't they determine if this guy is likely to get a job as a social worker? Had there been a labor market survey or something entered into evidence to show positions available? When you went to law school, did you know you were going to get a job when you got out? No. If your child comes to you and says, Dad, I want to get a degree in social worker, are you going to say, prove to me you can get a job? It's all speculation. I can't pay for it. But my parents do not hold me to the same standard as the Supreme Court holds for vocational rehabilitation and under the Workers' Compensation Commission. And in this case, it's not what could be. Unfortunately, I went to school to be a psychologist, and here I am today. I'm not Frasier Crane, so I'm afraid things can change. But in conclusion, Your Honor, the fact of the matter is simple. Under either the de novo review or the manifest way to the evidence, we have nothing more than the petitioner's stated desire to pursue a degree in social work. He has not proven that there's jobs available, that there's no transferable skills analysis, there is no evidence whether a more remedial vocational rehabilitation program is available, whether he could even work as a social worker based on his current condition. We only have the wish and desire of the petitioner. Thank you. Thank you. Counsel? Counsel, you may respond. Good morning, Mr. Justices. Counsel? And not to direct your argument, but obviously an overarching question is, what's your take on the standard of review? He says it's obviously de novo. Well, you know, the Braves case that they relied upon involved an accident. I think the petitioner tripped over a curb, and whether or not the appellate court could determine it as a matter of law because it was an undisputed set of facts. I think this is entirely different. Obviously, this is the reasonableness of a vocational plan awarded by Arbitrator Ganach and affirmed by the commission. I think of other significant importance is the National Teed case, the Hunter case, which the Supreme Court specifically ruled on the issue of voc rehab was all under the manifest way of the evidence standard. So, Mr. Justices, the simple fact is that the respondents disputed every issue of this case from day one, and apparently they've acquiesced to that. Now they're just saying that the voc rehab plan is unreasonable. I think it's a manifest way of the evidence standard, and under that standard they have a burden of proof. You look at basically what happened is that what was their voc plan? They knew the evidence was clear that this guy couldn't go back to his job, and they didn't prepare a voc plan for him. What they did do is that they did hire, and this is what I think the interesting part is in this case, and counsel didn't touch upon it, they hired a voc consultant. That's Mr. McKee? Mr. McKee. The reports, the only thing is in the record. His deposition wasn't taken by either party. Basically he met with the petitioner in excess of ten times in 2011, and his report set forth what he did. I think what the important thing to do is what he didn't do. First of all, he was retained by the respondent, and basically it looked like he was just sitting down and just talking about what the petitioner's goals and desires were. He didn't prepare a vocational rehabilitation plan. There was no indication in the reports that he helped him go find, hey, we've got some jobs down here that you can do, because it's clear that they've invented now, is that the guy couldn't go back to his prior job duties for the respondent. He could not perform anything but sedentary work, but there was no indication that the respondent assisted him in that regard, or Mr. McKee assisted him in that regard. Basically what McKee did do, what he indicated he did do, and maybe counsel didn't read this in the report, but it's clear in the report that the petitioner told McKee that, hey, I want to be a social worker. I want to like that. And what happened? What did McKee do? He did a labor market survey on the field of social work in Southern Illinois, and the report indicates that he sent it to the respondent, he sent it to the respondent's attorney. It was never offered. We never got it. I'll tell the court, we never got a copy. So there was a labor market survey conducted. So apparently the respondent was well aware of the desire to, for what the petitioner's desire was to become in the field of social work. What did they do? They could have offered evidence that, hey, this is not right for this guy. He doesn't have the qualifications. He's not qualified for this. They could have come up with some reason or an alternate plan. They didn't know anything. Despite the fact they knew that this man could not go back to his prior occupation. And I think that's critical because they had the opportunity at that point, prior to hearing to do something, and they chose not to do it. So what was the petition to do? He was left twisted in the wind, so he formulated his own plan. And I'll admit, the cases do say you have to take a look at those with some cautious eye because, you know, there has to be some rational basis or reasonable basis. But this gentleman seemed articulate. He was two and 12 hours away from an associate's degree. He wanted to have a field of social work with a four-year program, offered that for the arbitrator's consideration as to what he'd like to do. All right, so he's left twisting in the wind because, obviously, the company allegedly didn't follow up with their so-called expert. But how do you respond to his argument, okay, that's all well and good, but this is all in the realm of speculation when you get into the self-directed plan. How do we know that this is ever going to turn into anything? So what's your response to that? Well, I think that based on his credibility and his desire at hearing and the steps he has taken, that he would be successful at that. Could there possibly be more evidence? Sure, I guess every case could have more evidence. How many credits has he accumulated? Was there some testimony by him that he had accumulated a certain number of credits at the junior college level? Was that in the record? No, at the junior college, yeah, he was 12 hours short of obtaining his associate's degree at John A. Logan College. Any testimony or reference to his GPA or how he was doing? I think, Your Honor, I apologize, I can't answer that question directly. Half the record is enormous. There may have been, I thought we had given his, I think we had offered, I believe the record will show that we have offered the college transcript from John A. Logan, so it will show his GPA average. The reason I ask is obvious. If he's struggling, he's barely passing, he's dropping out of classes, that could tie into his argument. I would agree with that. But I think that, you know, and again, this is just basically, I guess this is something that would be unique to the arbitrator to see. This gentleman did, to me, express a desire to follow through with this, and he would go through it if he had the opportunity. Well, the arbitrator must have found him sincere because it came up with the plan. Right, right. And I think it's really critical, all right, is that, you know, they can cry foul now, but how about when they have the opportunity to do something? And it's not like they didn't, you know, okay, if they were going to take, try to hit a home run and dispute all issues, hey, why get involved with a, why hire a vocational consultant? And then basically have them sitting around just having a, I guess, a powwow with my client. I mean, really, there weren't steps taken to really help this guy out, and from a both rehab standpoint. And I met the guy, he seemed like a nice fellow, and his reports were, you know, basically he set forth what he did, and the important thing is that he actually prepared a labor market survey for this. It's not like we blindsided the respondent and said, hey, this guy can't do this. Were you ever able to discern why there was no follow-up from the company or with the consultant? No, I can't answer that. I don't know why. It surprised me, too, because, I mean, I was just thinking that, you know, what are you guys going to do about this guy? He needs some work. He needs something to do. Well, I've got to get instructions. But I think what happened, if you read his reports, he reported frequently to the respondent and the respondent's attorney, and basically they just, I don't know what happened, they just didn't get back to him and give him any instructions. So he, as he said, he was left twisted in the wind himself. So his hands were tied by the respondent who now comes in before you and says, hey, look, this isn't a good plan. Well, they had an opportunity to show why it wasn't a good plan and chose apparently not to do it until they put it on your laps. I appreciate your time. I think the arbitrator's and the commission's decision should be affirmed, and thank you. Mr. McGarry, I have a question. Did the employer raise the issue of vote rehab in the circuit court? I was looking for my brief, and I believe, and I think I would have caught that if they did not, and I'm going to say, I'm not going to put the life of my grandchild on it, but I'd say that issue was properly raised. All right, thank you. Thank you, counsel. Counsel, you may reply. Your Honor, I have two quick points I want to correct. First, the petitioner's attorney indicated the petitioner was only capable of working sedentary duty. That is factually incorrect. Both the treating physician and the independent medical examiner did place permanent restrictions on him. His treating physician thought he could lift up to 30 pounds. The independent medical examiner said 50 pounds. The petitioner testified at trial that he agreed with those determinations. So that is far from sedentary duty. Second of all, it is not the respondent's burden of proof to prove an entitlement to a vocational rehabilitation plan. Regardless of what Mr. McKee may or may not have done, the petitioner failed to present evidence to meet the guidelines under national, I'm sorry, under the guidelines set by the Supreme Court. The petitioner could have chosen to proceed and attain his own vocational counselor. Certainly if he was pursuing permanent total disability benefits under an on-lot theory, he would have done so. Whether or not Mr. McKee had a labor market survey, there is not one in the record. So it's irrelevant at this point. Why is it irrelevant? Your company obviously retained McKee as a consultant to do something, and yet nothing ever ended up being proposed, right? That is correct. Although we were not involved in the case at the time, I'm only left to speculate that the reason they didn't pursue vocational rehabilitation services was because they chose to dispute accident and notice. The case was tried on a 19B hearing. The proper decision would have been to find that the petitioner was entitled to vocational rehabilitation and instruct the respondent to come up with a vocational rehabilitation plan and service. That is the difference here. Instead, the arbitrator awarded a specific plan, and the Supreme Court's decision in Hunterford Corporation, I referenced this earlier, is almost directly on point because in that case, the Supreme Court found that the petitioner who had testified, I want to finish up my education, in that case he needed 28 more hours to complete his education. They found that the petitioner's own statements were insufficient to support an award of a specific vocational rehabilitation plan. Hunter is distinguishable from my current case in the fact that the claimant in Hunter had better evidence. He had more evidence. We knew how many hours he needed and the cost associated with obtaining these hours. In this case, we do not. We don't know how many hours he needs to get to school to get a degree. We don't know what degree he needs to take. We don't know the cost of obtaining the degree. We don't know if a position is available. We don't know if there's a different set of training or certification he could obtain to obtain a degree in social work. A final point I'd like to make is as to whether or not the petitioner could complete this program. The petitioner did testify that he had tried college once before. He was a scholarship athlete at a four-year university. He made it through one year. No evidence or testimony was presented to indicate why he stopped the education, but it should be noted that one time before, he either chose not to or could not proceed. Who was the arbitrator? Arbitrator Granata. Thank you. Thank you. Counsel, both thank you for your arguments in this matter. It will be taken under advisement. A written disposition shall issue.